MCCC - CIVIL
JAN 23 '25 PM2:59

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT

IN AND FOR MARION COUNTY, FLORIDA

| | | |
|---|---|---|
| Robert S. Hogarty, Plaintiff | } | |
| | } | |
| v. | } | CASE NO. 25CA157 |
| | } | |
| Orgill, Inc., | } | |
| | } | |
| Monsanto Company, | } | |
| | } | |
| Bayer Corporation, and | } | |
| | } | |
| Dale R. Vance, Defendants | } | |

UNOFFICIAL DOCUMENT

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Robert S. Hogarty, sues Defendants, Orgill, Inc., Monsanto Company, Bayer Corporation, and Dale R. Vance, jointly and severally, and alleges as follows:

1. This is an action for damages for a sum within the jurisdictional limits of this court, to wit in excess of $1,000,000.00.

2. Plaintiff was at all times material to this Complaint a resident of Marion County, Florida and is now a resident of Levy County, Florida.

3.    Defendant Orgill, Inc. is a corporation organized and existing under the laws of

the State of Tennessee with its principal place of business located at 4100 South Houston Levee Road, Collierville, TN 38017. Defendant Orgill, Inc. has done and is doing business in the State of Florida by designing, manufacturing, importing, marketing, distributing and selling various agricultural and landscaping related products and equipment directly and/or indirectly to the general public . Defendant Orgill, Inc. is registered to do business within the State of Florida and has appointed CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324  as its agent to receive service of process herein.

4. Defendants Monsanto Company and Bayer Corporation are each foreign corporations organized and existing under law and are merged entities though both remain registered and active corporations in the State of Florida. Each has appointed Corporate Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525 as its registered agent for service of process herein.

5. Defendant Dale R. Vance is a citizen and resident of Canada. At all times material to the complaint herein Defendant Vance was the owner of real property in Marion County, Florida located at 4305 NW 35th Street, Ocala, Florida 34482. At all times material to the complaint herein Defendant Vance resided at such property. Defendant Vance sold such real property in the summer of 2023 but remains, on information and belief, a seasonal resident of Marion County, Florida and will be served personally with

process herein. Alternatively Defendant Vance has done and is doing business within the State of Florida and Marion County and has sufficient minimum contacts with Marion County, Florida to be subject to service of process herein through the Florida Secretary of State.

6. In September, 2015 Orgill, Inc. filed for a United States Trademark for "Landscapers Select"  to brand various garden and landscape related goods and services including hose nozzles and sprayer wands and related products. Such Trademark was registered on August 1, 2017 under Registration Number 5257318. Sometime prior to February, 2023, Defendant Orgill, Inc under the "Landscapers Select" brand designed,  manufactured, marketed, distributed and/or sold directly or indirectly two gallon pump sprayers to the general public including within the State of Florida. Such pump sprayers were designed, manufactured, marketed, distributed and sold intended to be used for the application of fertilizing and/or herbicidal liquids in an agricultural and/or residential yard setting for the promotion of desired vegetation and the eradication of undesired vegetation.

7. Defendant Monsanto Company was responsible for the development, manufacturing, marketing, distribution and sale, directly of indirectly to the general public, including within the State of Florida, of a herbicide trade name Roundup. Defendant Bayer merged with Defendant Monsanto in, on information

and belief, 2015 though both remain registered as active within the State of Florida. At the time of the actions forming the basis of the complaint herein Roundup was designed, manufactured, marketed and distributed as a product of both Defendants Monsanto and Bayer.

8. Roundup has long been and was at all times material hereto manufactured in a full strength version with a self-applicator container and as a concentrated version to be diluted with water for application by various means, including in pump sprayers. Defendant Orgill, Inc. had actual knowledge at all times material hereto that the pump sprayers it designed, manufactured, marketed, distributed and sold were used for applying diluted Roundup concentrate. In the alternative if Defendant Orgill, Inc. claims it had no  such actual knowledge, Defendant Orgill, Inc. should have known of such use in the exercise of ordinary care. Defendants Monsanto Company and Bayer Corporation had actual knowledge at all times material hereto that Roundup concentrate was commonly diluted for application in pump sprayers. In the alternative, should such actual knowledge be denied by Defendant Monsanto and/or Defendant Bayer, both of such Defendants should have had such knowledge of such common use in the exercise of ordinary care.

9. At the invitation of Defendant Vance, Plaintiff lived in his recreational vehicle on the real property owned by Defendant Vance at various times from approximately

early 2020 through July, 2023. Plaintiff's residing on Defendant Vance's property provided a presence which improved security of the property which had been problematic. Defendant Vance had inherited the property from his aunt upon her death and thereafter was marketing such property for sale. Plaintiff on a voluntary basis helped clean up and maintain the five acre property which had been a horse facility. Such efforts were to improve livability on the property and to improve the marketability and attractiveness of the property. Defendant Vance did not charge Plaintiff for living on Defendant Vance's property. Plaintiff did not charge Defendant Vance for any of the work Plaintiff did on the property. Defendant Vance at some point in time from some currently unknown source obtained a Landscapers Select brand two gallon pump sprayer. Defendant Vance also purchased Roundup concentrate to be applied in such sprayer. Defendant Vance provided such pump sprayer and Roundup to Plaintiff to use in the course of Plaintiff's work on Defendant Vance's property. On or about February 7, 2023 in the course of trying to eradicate the weeds in an overgrown flower bed in the front yard/driveway area of the property, Plaintiff was applying Roundup diluted per label instructions by using the Landscaper Select brand pump sprayer. The pump sprayer during its use had to be periodically pumped up by its internal handle pump to maintain the pressure required for effective dispersion of the liquid contents contained in the sprayer. Plaintiff had expended about one-half to two-thirds of the solution at which point the spray dispersion again faded indicating that the pump sprayer needed to be pumped up again. Plaintiff pumped up the pump sprayer in the usual manner to the

usual degree. At this point Plaintiff received a telephone call from his wife. Plaintiff answered the telephone call and squatted down to talk with his wife. The pump sprayer was upright on the ground, in front of and slightly to the left of Plaintiff approximately twelve inches from Plaintiff's face. After conversing with his wife for about fifteen seconds, the pump sprayer spontaneously exploded, causing Plaintiff to fall backwards, impacted by the concussive force of the explosion, by fragments of the pump sprayer, and soaked in the face, head and front by the spray of Roundup.

10. After recovering from the initial shock, Plaintiff obtained the container of Roundup that was being used and called the emergency telephone call line stated on the container label. Plaintiff's immediate concern was inhalation of the vaporized Roundup as well as exposure of his eyes to the vaporized Roundup. Plaintiff followed the treatment recommendations received from the emergency call line.

11. Plaintiff suffered a concussion from the force of the explosion. Plaintiff also suffered nerve damage and double or blurred vision from the force of the explosion. That nerve damage and visual impairment have persisted from the time of the explosion and are ongoing. Each and every day since the explosion, Plaintiff has experienced a significant unremitting, intractable, ceaseless headache as a direct and sole consequence of the nerve damage caused by the explosion. Medical treatment, medication and care have not improved that condition.

12. Defendant Orgill, Inc. as the entity responsible for the design, manufacture, marketing, distribution, and sale of its two gallon pump sprayer intended for sale to and in fact sold to the general public, as described above, owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, marketing, distribution and sale of the two gallon pump sprayer. Defendant Orgill, Inc., in breach of the duties described above, negligently and carelessly, and on the basis of strict liability :

a. designed, manufactured, marketed, distributed and sold a pump sprayer with a tank of a material susceptible to deterioration by reason of exposure to chemicals that would foreseeably be contained in and applied by the pump sprayer;

b. designed, manufactured, marketed, distributed and sold a pump sprayer with a tank of a material susceptible to deterioration by reason of exposure to sunlight and other common environmental factors to which the pump sprayer would be foreseeably exposed;

c. designed, manufactured, marketed, distributed and sold a pump sprayer with a tank of a material with insufficient burst strength to withstand the internal pressure that could be generated by the pump of the pump sprayer;

d. designed, manufactured, marketed, distributed and sold a pump sprayer with a pump that could generate an internal burst pressure in the tank of the pump sprayer in excess of the burst strength of such tank;

e. designed, manufactured, marketed, distributed and sold a pump sprayer without a pressure relief valve that would actuate so as to relieve internal tank pressure before the burst strength of the tank of the pump sprayer was close to or actually being exceeded;

f. failed to warn the consumer and all intermediate parties and end users of the defects identified in subparagraphs a through e above;

g. failed to warn the consumer and all intermediate parties and end users that such pump sprayer could be pumped to an internal pressure in excess of the burst strength of the tank of the pump sprayer;

h. failed to warn the consumer and all intermediate parties and end users that the tank of the pump sprayer was susceptible to deterioration by reason of exposure to chemicals that would foreseeably be contained in and applied by such pump sprayer;

i. failed to warn the consumer and all intermediate parties and end users that the tank of the pump sprayer was susceptible to deterioration by exposure to sunlight and other common environmental factors to which the pump sprayer would be foreseeably exposed.

13. As a direct and proximate result of the conduct of Defendant Orgill, Inc. described above, the Landscapers Select brand two gallon pump sprayer contained a defect or defects that rendered it unsafe for its intended use.

14. At all times material to the complaint stated herein, Defendants Monsanto Company and Bayer Corporation designed, manufactured, marketed, distributed and sold the herbicide Roundup for sale to the general public including within the State of Florida, including specifically the Roundup concentrate that was diluted per container instructions that had been purchased by Defendant Vance and which was contained in and being applied by use of the Landscapers Select brand two gallon pump sprayer at the time the tank of such pump sprayer exploded. Such use for killing weeds was in fact not only foreseeable but was in fact that use for which Defendant Monsanto Company and Defendant Bayer Corporation had designed, manufactured, marketed, distributed and sold Roundup.

15. Defendant Monsanto Corporation and Defendant Bayer Corporation as the entities responsible for designing, manufacturing, marketing, distributing and selling Roundup as described above, owed a duty to Plaintiff to exercise reasonable care in designing, manufacturing, marketing, distributing and selling Roundup.

16.    Defendant Monsanto Company and Defendant Bayer Corporation, in breach of the duty described above, negligently and carelessly, and on the basis of strict liability, designed, manufactured, marketed, distributed and sold Roundup in the following respects:

a. by failing to formulate Roundup so as to prevent such product from causing deterioration of the composition and strength of products that Roundup would foreseeably come in contact with during application of Roundup including, specifically, pump sprayers;

b. by failing to formulate Roundup so as to prevent medical injury and adverse consequences to consumer users of Roundup that became exposed to a quantity of Roundup by the vaporization of the Roundup in the course of an explosion of the pump sprayer containing the Roundup.

17. As a direct and proximate result of the conduct of Defendant Monsanto and Defendant Bayer Corporation described above, the Roundup contained a defect or defects that rendered it unsafe for its intended use.

18. Defendant Vance was, at all times material to this complaint, the owner of the Landscapers Select brand two gallon pump sprayer and of the Roundup concentrate herbicide used therein. On or about February 7, 2023, the pump sprayer and the Roundup were provided by Defendant Vance to Plaintiff so that Plaintiff could eradicate weeds in a flower bed in the front yard/entrance driveway area of Defendant Vance's property which was at that time being marketed for sale and which was in fact sold in the summer of 2023. As described herein, the pump sprayer exploded, Plaintiff sustaining injury by reason of such explosion. As owner of the pump sprayer, Defendant Vance had the obligation to exercise reasonable care in providing to Plaintiff a pump sprayer and a herbicide that were not defective and were fit for their intended purposes. Defendant Vance breached and failed to satisfy such obligations. Instead Defendant Vance provided a pump sprayer and a herbicide that contained defects that made such unfit for their intended purposes. At the time of the explosion, Defendant Vance was seated on the patio in front of his residence approximately thirty feet from the point of the explosion. Despite the magnitude of the explosion and the noise generated by such explosion, Defendant Vance did not come to check on or help Plaintiff and in fact never even stood up from his chair. After calling the Roundup emergency line and employing the Roundup exposure treatment suggestions given to him, Plaintiff went up to Defendant Vance who was still seated on his front porch and asked Defendant Vance where Defendant Vance had obtained the pump sprayer and the Roundup he had provided to Plaintiff and when such were obtained. Defendant Vance stated he had no

recollection of when or from where he had acquired the pump sprayer or the Roundup and further that he had no knowledge of the condition of the pump sprayer prior to the explosion.

19. Defendant Vance's conduct in providing a defective pump sprayer and the Roundup to Plaintiff with, supposedly and especially, no knowledge or recollection of when or from whom the pump sprayer was acquired or the pre-explosion condition of the pump sprayer was negligent and careless and failed to satisfy Defendant Vance's obligation to  exercise reasonable care in the providing of the pump sprayer and Roundup to Plaintiff. Defendant Vance is also liable on the basis of strict liability.

20. As a direct and proximate result of the Defendants' conduct, jointly and severally, as described above, Plaintiff suffered bodily injury and resulting pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, and expense of medical care and treatment. The losses are either permanent or continuing in nature and Plaintiff will suffer additional losses and expenses in the future.

21. The conduct of each of the Defendants as detailed herein was intentional,  deliberate, and in reckless disregard of the rights of the general public, of consumers and users of the Landscapers Select pump sprayer and Roundup

generally, and of, in particular, Plaintiff herein. Accordingly each of the Defendants are liable for punitive damages

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests judgement against Defendants Orgill, Inc., Monsanto Company, Bayer Corporation, and Dale R. Vance, jointly and severally, for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further and other relief to which Plaintiff may show himself justly entitled. Plaintiff demands trial by jury in the above entitled action.

Dated: 4/20/2025

Robert S. Hogarty

Pro Se

P.O. Box 393
Morriston, Florida 32668

352-736-0045

Lonepalm23@outlook.com