**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

ROBERT S. HOGARTY,

     Plaintiff,

v.                                                      Case No. 5:25-cv-122-KKM-PRL

ORGILL, INC. et al.,

     Defendants.

_____

**<u>ORDER</u>**

Robert Hogarty sues Orgill, Inc., Monsanto Company, Bayer Corporation, and Bayer CropScience LP, for injuries he sustained when a pump sprayer exploded. 3d Am. Compl. (Doc. 77). Bayer Corporation moves to dismiss for lack of personal jurisdiction. Bayer Corp. MTD (Doc. 80). Monsanto and Bayer CropScience jointly move to dismiss for failure to state a claim.[1] Joint MTD (Doc. 84). Orgill moves to dismiss for failure to state a claim and moves to strike Hogarty's request for punitive damages. Orgill MTD (Doc. 82).

---

[1] Monsanto originally moved on its own, (Doc. 81), and Bayer CropScience did not timely move. After I entered an order noting Bayer CropScience's failure to timely respond, (Doc. 83), Monsanto and Bayer CropScience jointly moved to dismiss and explained that Bayer CropScience's failure to join the first motion was a "clerical mistake" by counsel, who represents both defendants. *See* Joint MTD at 1–2 n.1. Because Hogarty responded only to the joint motion and did not argue that he was prejudiced by allowing Bayer CropScience's untimely motion, *see* Resp. to Joint MTD at 2–3, I accept the joint motion and deny Monsanto's original motion as moot.

Hogarty opposes each motion. Resp. to Bayer Corp. (Doc. 88); Resp. to Joint MTD (Doc. 92); Resp. to Orgill (Doc. 89). Bayer Corporation replies in support of its motion. Reply (Doc. 96). For the reasons explained below, I grant Bayer Corporation's motion, and grant in part the joint motion and Orgill's motion—except insofar as it is a construed motion to strike, which I deny.

## I.    BACKGROUND

Orgill is a corporation that manufactures various products, including two-gallon pump sprayers branded as a "Landscapers Select" product. 3d Am. Compl. ¶¶ 5, 10–12. Monsanto is a corporation that is "responsible for" developing, marketing, and selling the herbicide Roundup. *See id.* ¶ 6. Monsanto is owned by Bayer AG. *Id.* Bayer Corporation is another subsidiary of Bayer AG and is alleged by Hogarty to have also played a role in developing, marketing, and selling Roundup. *See id.* ¶ 7. Bayer CropScience is a limited partnership that is also "responsible for" developing, marketing, and selling Roundup. *Id.* ¶ 8.

On February 7, 2023, Hogarty applied a solution of water and Roundup Weed & Grass Killer Concentrate Plus to weeds in a flower bed at a property in Ocala, Florida. *Id.* ¶¶ 1, 18. Hogarty mixed the water and Roundup in accordance with the instructions on the package and used a two-gallon pump sprayer manufactured by Orgill to spray the solution. *Id.* ¶ 18. "In the course of applying" the solution, the pump sprayer exploded when "it was

2

approximately twelve inches from [Hogarty's] face." *Id.* ¶ 19. Hogarty sustained "a concussive impact primarily to his left eye, to his face and to his head given the force of the explosion, a physical impact to his left eye and the area of his face around such eye from a fragment of the tank of the pump sprayer." *Id.* Hogarty also suffered a "high pressure exposure" of Roundup in or on "his eyes, face, head, nose, mouth, arms, legs, and the front of his body." *Id.*

Since the explosion, Hogarty has dealt with concussion symptoms, "blurred and double vision," "ceaseless headaches," and "other eye related issues." *Id.* ¶ 24. "The blurred/double vision, other eye issues, and headaches continue unabated to this day despite extensive medical treatment." *Id.*

Hogarty initiated this action on February 18, 2025, and, after multiple rounds of dismissed complaints for shotgun pleading issues, filed the operative third amended complaint on November 17, 2025.[2] He asserts strict product liability and negligence claims against all defendants and fraudulent and negligent misrepresentation claims against Monsanto, Bayer Corporation, and Bayer CropScience. *See generally* 3d Am. Compl.

---

[2] Monsanto, Bayer CropScience, and Orgill argue that the third amended complaint is another shotgun complaint. *See* Joint MTD at 16–17; Orgill MTD at 3–5. The gravamen of a shotgun pleading is that it fails to provide the defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although not a model complaint, this iteration provides adequate notice.

## II.    LEGAL STANDARDS

A claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned,  the-defendant-unlawfully-harmed-me  accusation." *Ashcroft  v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor do "naked assertion[s]" devoid of "further factual enhancement" suffice. *Twombly*, 550 U.S. at 557.

### A. Federal Rule of Civil Procedure 12(b)(2)

A defendant may move to dismiss a claim for relief under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A plaintiff attempting to exert personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If a defendant submits an affidavit disputing the plaintiff's allegations, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*,

4

447 F.3d 1357, 1360 (11th Cir. 2006). Where factual conflicts exist, "the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

## C. Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Matter of Olympia Dev. Grp., Inc.*,

5

No. 9-cv-2230, 2010 WL 11629141, at *2 (M.D. Fla. Feb. 3, 2010), *report and recommendation adopted sub nom. Olympia Dev. Grp., Inc. v. Non-Filing Claimants*, No. 9-cv-2230, 2010 WL 11629137 (M.D. Fla. Feb. 22, 2010).

"The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Hutchings v. Fed. Ins. Co.*, No. 8-cv-305, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (citation modified). "It is not intended to procure the dismissal of all or part of a complaint." *Id.* (citation modified). Motions to strike are a "drastic remedy" and are generally disfavored. *Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012). Therefore, "a court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995); *see also Schmidt*, 289 F.R.D. at 358.

## III.   ANALYSIS

### A. Personal Jurisdiction

Bayer Corporation asserts that all claims against it must be dismissed because, as a nonresident entity, Bayer Corporation is not subject to personal jurisdiction in Florida. *See* Bayer Corp. MTD at 2–3; *see also* FED. R. CIV. P. 12(b)(2). Bayer Corporation argues that it is not subject to general jurisdiction in Florida and that, despite Hogarty's allegations to the contrary, Bayer

Corporation did not engage in conduct that brings it within the reach of Florida's long-arm statute or that would make personal jurisdiction here comport with due process. *See* Bayer Corp. MTD at 7–11.

In support, Bayer Corporation relies on the declaration of Darcey Rhoades, who is an "Assistant Secretary" of Monsanto and a "Vice President" of Bayer Corporation. *See* Rhoades Decl. (Doc. 43-1) ¶ 3. Bayer Corporation is an Indiana corporation with a principal place of business in New Jersey. *Id.* ¶ 7. "Since January 1, 2003, Bayer Corporation has been a non-operating holding company and has not and does not conduct an active trade or business." *Id.* ¶ 8. "Bayer Corporation has never operated Monsanto." *Id.* ¶ 10. Further, "Bayer Corporation has never researched, designed, tested, developed, manufactured, packaged, marketed, promoted, advertised, distributed, labeled, sold, or provided warnings for" Roundup. *Id.* ¶ 11. "Bayer Corporation has never sold" Roundup in Florida and "has never shipped or distributed" Roundup into Florida. *Id.*

Although Hogarty agrees with Bayer Corporation that it is not subject to general jurisdiction in Florida, he resists the conclusion that there is no specific personal jurisdiction in Florida. *See* Resp. to Bayer Corp. at 4–7. Because Hogarty's accusations fail to overcome Bayer Corporation's contrary declaration, I dismiss the claims against Bayer Corporation for lack of personal jurisdiction.

7

Federal courts use a two-step inquiry to determine whether personal jurisdiction exists over a nonresident defendant. *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005). Looking to state law, the court must first "determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). Second, a court must ensure that exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *See Horizon Aggressive Growth*, 421 F.3d at 1166. Under the Due Process Clause, a court may exercise specific jurisdiction over a nonresident entity based on its "commission of some single or occasional acts" in the forum so long as the claim itself "aris[es] out of or relate[s] to [those] contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) ("Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction."). For specific jurisdiction to attach, a defendant must " 'purposefully avail[]' itself of the privilege of conducting activities—that is, purposefully establish[] contacts—in the forum state and there must be a sufficient nexus between

those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Starting with step one, "[u]nder Florida's long-arm statute, a defendant is subject to either specific jurisdiction, which applies if the claim arises out of or is related to defendant's contacts with Florida, or general jurisdiction, which applies regardless of whether the claims involve the defendant's activities in Florida if the defendant engages in substantial and not isolated activity in Florida." *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021); *see SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1223 (11th Cir. 2023) (explaining that Florida's long-arm statute reaches "anyone who personally or through an agent engages in any of nine enumerated acts, as long as the cause of action arises from that act." (quoting § 48.193(1)(a), Fla. Stat.)). Accordingly, a court may exercise jurisdiction over a nonresident defendant that "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture," or commits a tortious act in Florida, or causes injury to persons within Florida "arising out of an act or omission by the defendant outside" of Florida. *See* § 48.193(1)(a), Fla. Stat.

Here, although Hogarty's complaint alleges sufficient facts to make a prima facie case for specific jurisdiction, his jurisdictional evidence fails to overcome Bayer Corporation's declaration that it neither conducts operations in Florida nor controls Monsanto's activities in Florida. To start, the complaint

alleges that Bayer Corporation is "responsible for designing, developing, formulating, manufacturing, testing, labeling, determining warnings, packaging, advertising, promoting, marketing, distributing and/or selling various forms of the herbicide marketed and sold principally branded as Roundup." 3d Am. Compl. ¶ 7; *see, e.g.*, *id.* ¶¶ 87–88 (making substantially similar allegations), 90 (alleging that Bayer Corporation placed defective Roundup into the stream of commerce after which the Roundup "reached the intended consumers, handlers, users and other persons coming into contact with and exposed to this product in Florida, including Plaintiff"). The complaint essentially repeats these conclusory allegations in the other counts against Bayer Corporation. *See, e.g.*, *id.* ¶¶ 96–98, 102–08, 114–20.

Bayer Corporation's declaration categorically refutes these allegations by asserting that Bayer Corporation is "a non-operating holding company" without "an active trade or business" and "has never researched, designed, tested, developed, manufactured, packaged, marketed, promoted, advertised, distributed, labeled, sold, or provided warnings for" Roundup anywhere, including in Florida. *See* Rhoades Decl. ¶¶ 8, 11. Absent contrary evidence, the declaration establishes that Bayer Corporation is not "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida]" and did not engage in the alleged tortious or injurious conduct either directly or "through an agent." *See* § 48.193(1)(a), Fla. Stat. The burden thus returns to

10

Hogarty "to produce evidence supporting personal jurisdiction." *Stubbs*, 447 F.3d at 1360. Hogarty fails to carry that burden.

Hogarty responds that the declaration of Darcey Rhoades "should be given no evidentiary value or effect." *See* Resp. to Bayer Corp. at 10. Hogarty also asserts that there is jurisdiction because Bayer Corporation "is doing business" in Florida because it "is a corporation registered to do business in Florida and which maintains a registered agent for service of process." *See id.* at 6–7. Hogarty appears to also contend that Bayer Corporation's status as a "parent . . . of the indirect subsidiary" Monsanto and consequential "right, and the commensurate obligation, to manage Monsanto" provide a basis for specific jurisdiction over Bayer Corporation. *See id.* at 17–18. I address the latter two arguments before turning to Hogarty's contentions regarding the declaration.

As the complaint alleges, Bayer Corporation is "a registered and active corporation in the State of Florida" with a "registered agent for service of process." 3d Am. Compl. ¶ 7. This does not mean that Bayer Corporation operates, conducts, engages in, or carries on a business or business venture in Florida. *See Killam v. Air & Liquid Sys., Inc.*, No. 8:16-cv-2915-T-33TBM, 2017 WL 119778, at *3 (M.D. Fla. Jan. 12, 2017) (rejecting the argument that allegations of authorization to do business in Florida are sufficient to qualify as operating a business in Florida under § 48.193(1)(a)(1), Florida Statutes). Further, to accept Hogarty's argument would be to effectively find that

11

registering for business in Florida subjects Bayer Corporation to general jurisdiction here. The Eleventh Circuit has denied this argument. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1320 (11th Cir. 2018) (holding that a foreign corporation's registration to do business and appointment of an agent for service of process in Florida does not amount to "consent to general jurisdiction in the Florida courts" under Florida law). Bayer Corporation's registration in Florida is of no relevance to whether personal jurisdiction exists over it.

It is difficult to pin down Hogarty's theory for why Bayer Corporation is subject to personal jurisdiction in Florida because of its status as a "parent . . . of the indirect subsidiary" Monsanto. *See* Resp. to Bayer Corp. at 17–18. Rather than aver that Bayer Corporation directed Monsanto's actions in Florida, the theory appears to be that Bayer Corporation *could* and *should* have directed Monsanto's actions. *Compare id.* at 5 (disavowing that his theory is that Monsanto was an agent for Bayer Corporation or vice versa), *with id.* at 17–18 (arguing that Bayer Corporation "had the right" and "obligation" to manage Monsanto and by "fail[ing] to manage effectively" it "contributed to" Monsanto's wrongful actions). Thus, by its apparent failure to operate Monsanto, Bayer Corporation is responsible for Monsanto's actions. Even harder to pin down are any allegations in the complaint to that end. The closest the complaint comes is the allegation that "Bayer Corp[oration] performs all

12

such functions for itself and for the other Roundup Defendants and in consultation and coordination with the other Roundup Defendants." 3d Am. Compl. ¶ 7. This does not subject Bayer Corporation to personal jurisdiction in Florida even after liberally construing this allegation as supporting Hogarty's theory.

A foreign parent corporation is not subject to jurisdiction in Florida merely because its subsidiary does business there. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120–121 (Fla. 3d DCA 2011) ("It is, of course, well settled that a parent corporation and its wholly-owned subsidiary are separate and distinct legal entities." (citation modified)). "Where the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (citation modified). In other words, a subsidiary's contacts only justify jurisdiction over the parent when the subsidiary is a mere "alter ego," *see Daimler*, 571 U.S. at 134–35, or when "a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs," *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1146 (Fla. 3d DCA 2007); *see also Enic,*

13

*PLC v. F.F. South & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004) ("The amount of control exercised by the parent must be high and very significant.").

Hogarty's theory fails. As noted above, he admits that Monsanto and Bayer Corporation do not have an agency relationship. *See* Resp. to Bayer Corp. at 5. He similarly admits that Monsanto was not an "alter ego" of Bayer Corporation. *See id.* at 4. It is irrelevant that Bayer Corporation might have the right to control Monsanto. *See, e.g.*, *Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1161 (Fla. 4th DCA 2006) ("The amount of control *exercised* by the parent must be high and very significant." (emphasis added)); *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 276 (11th Cir. 2005) (per curiam) ("Because the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction, one of the factors to be considered is the amount of control *exercised* by the foreign corporation." (citation modified)).

Hogarty puts forth roughly four arguments for discrediting Bayer Corporation's declaration: (1) because Rhoades's LinkedIn indicates that Rhoades has worked in a variety of positions throughout the broader Bayer AG corporate umbrella, Rhoades's declaration was not made based upon personal knowledge; (2) it is unbelievable that there would be a corporate record that states that Bayer Corporation was not involved in Roundup, and if there is, it should be produced in place of the declaration; (3) Florida Secretary of State

14

records establish that Bayer Corporation had corporate officers related to various "divisions" and that Bayer Corporation "acted as the managing member" of limited liability companies after 2003; and (4) a website that Hogarty purports is operated by Bayer Corporation hosts a link to a non-Bayer Corporation website featuring a letter from Bayer AG promoting the safety of Roundup, thus Bayer Corporation is, contrary to the declaration, "marketing, promoting, or advertising Roundup." *See* Resp. to Bayer Corp. at 10–17.

Rhoades's declaration is "based on [her] personal knowledge and [her] knowledge of company documents." Rhoades Decl. ¶ 2. Hogarty cites no case law for the proposition that Rhoades's declaration cannot include personal knowledge learned from a review of corporate documents. Nor does he cite any case law requiring those documents be produced in place of a declaration for purposes of a 12(b)(2) motion. Courts have allowed, at summary judgment, declarations on behalf of a corporate defendant that were based on the declarant's knowledge after reviewing corporate documents. *See Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-cv-538-J-20TEM, 2010 WL 1930977, at *1–2 (M.D. Fla. May 13, 2010) (collecting cases and noting a lack of cases to the contrary). I see no reason why the same cannot be done under these circumstances. As to Hogarty's second argument, the burden shifting rule does not prescribe specific kinds of evidence that must be produced by either party. *See, e.g., Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir.

15

1996) ("When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." (citation omitted)). I reject both arguments.

Hogarty's reliance on the Florida Secretary of State's records is unavailing. That Bayer Corporation might have corporate officers with titles that appeared to relate to various "operating divisions" or that it served as a managing member of limited liability companies in 2005, 2007, and 2009 does not disprove any of the representations in Rhoades's declaration. *See* Resp. to Bayer Corp. at 21–22. And, even if these facts did call into question any averments, they certainly do not belie the key statements that Bayer Corporation "has never operated Monsanto," has had nothing to do with Roundup, and has never sold, shipped, or distributed Roundup in Florida. *See* Rhoades Decl. ¶¶ 10–11.

The fact that Bayer Corporation might own and operate a website that includes a link that takes visitors to a separate website that is not operated by Bayer Corporation where they can view a letter authored by Bayer AG that promotes Roundup is also insufficient to refute Bayer Corporation's declaration that it has not advertised, promoted, or marketed RoundUp. Courts decline to conclude that including in messages links to a website that contained promotions constituted advertising. *See An Phan v. Agoda Co. Pte.*

16

*Ltd.*, 351 F. Supp. 3d 1257, 1266 (N.D. Cal. 2018) ("To hold otherwise would run headlong into the decisions in this Circuit and others holding that inclusion of the link to a defendant's website, without more, does not render a message advertising or telemarketing."), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157 (9th Cir. 2020). This is even more so when a defendant did not send a message with such a link and merely passively included the link on its website. Similarly, in the securities context, the Supreme Court held that even directly hosting on one's website a document authored by another did not constitute "adopt[ing] the document as [the host's] own statement or exercis[ing] control over its content." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 148 n.12 (2011). Bayer Corporation's inclusion of the link (which makes no mention of "Roundup") on its website, *see* Resp. to Bayer Corp. at 15, does not undermine Bayer Corporation's declaration that it has not advertised, promoted, or marketed Roundup.

Hogarty fails to respond to Bayer Corporation's declaration with "evidence supporting jurisdiction." *Mazer*, 556 F.3d at 1274 (quoting *Meier*, 288 F.3d at 1269). After accounting for the unrebutted declaration, there are no allegations against Bayer Corporation that bring it within the reach of Florida's long-arm statute or that would make the exercise of jurisdiction over it comport with the Due Process Clause of the Fourteenth Amendment. Thus,

17

I dismiss all counts against Bayer Corporation without prejudice for lack of personal jurisdiction.

### B. Failure to State a Claim for Relief

The remaining defendants argue that I should dismiss Hogarty's complaint for failing to state a claim. Monsanto and Bayer CropScience jointly move to dismiss the strict product liability, fraudulent misrepresentation, and negligent misrepresentation counts against them.[3] Joint MTD. Because the allegations against them do not differ in any material way, *compare* 3d Am. Compl. ¶¶ 46–85, *with id.* ¶¶ 126–165, I analyze them together before turning to Orgill's contentions for dismissing the strict product liability count.

### 1. Hogarty's strict product liability claims against Monsanto and Bayer CropScience survive as to design and manufacturing defect theories

"[T]here are three elements to a strict liability products claim under Florida law: (1) a relationship between the defendant and the product; (2) a

---

[3] Monsanto, Bayer CropScience, and Orgill appear not to move to dismiss the negligence claims against them. Although Monsanto and Bayer CropScience assert that "the third amended complaint should be dismissed," Joint MTD at 7 (citation modified), and Orgill states that Hogarty "fails to adequately allege . . . negligence claims," Orgill MTD at 5, none of them make any arguments about the negligence claims. Beyond cursorily stating that "Plaintiff asserts both strict-liability and negligence-based products liability claims . . . [t]he only difference is that negligence claims require a showing of negligence," Joint MTD at 7, Monsanto and Bayer CropScience do not ever address the negligence claims or argue for their dismissal. The contention that the only difference is that negligence must be shown is an oversimplification. For its part, Orgill never mentions negligence again. To the extent any of these defendants moved to dismiss the negligence claims, I decline to formulate their own arguments for them and their motions are denied as to those claims.

defect which caused the product to be unreasonably dangerous; (3) causation between the defect and the harm suffered by the user." *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 607 (11th Cir. 2008) (per curiam). Within the realm of product liability, "there are three basic families of defects that may be the subject of strict product liability: manufacturing defects, design defects, and failures to warn." *Force v. Ford Motor Co.*, 879 So. 2d 103, 106 (Fla. 4th DCA 2004).

Hogarty alleges all three defect theories. *See* 3d Am. Compl. ¶¶ 46–48, 126–28. Monsanto and Bayer CropScience move to dismiss on the basis that Hogarty's complaint fails to state a claim under any of the theories.[4] Joint MTD at 8–13. Beginning with the design defect theory, they claim, oddly, that Hogarty does not allege that the defect is the proximate cause of his injury and that Hogarty does not allege the injuries that he sustained. *Id.* at 9. To be clear, Hogarty alleges that he suffered and continues to suffer "blurred and double vision, other eye related issues, and intractable, ceaseless headaches caused by injury to the left supratrochlear nerve and trigeminal nerve root V1." 3d

---

[4] Throughout their motion, Monsanto and Bayer CropScience rely on case law concerning the summary judgment stage. *See, e.g.*, Joint MTD at 10. For the most part, these are entirely inapplicable to the instant motion, and where they might have some application, I find them unpersuasive given the low bar for pleading a strict product liability claim under Florida law. Similarly, although they repeatedly argue for dismissal based on allegations that Hogarty included in earlier iterations of his complaint and that he did not include in the operative complaint, *see e.g.*, *id.* at 4, 9, 15–16, Monsanto and Bayer CropScience identify no authority that would allow me to dismiss on such grounds. I decline to do so.

19

Am. Compl. ¶ 24. He also alleges that the defects in Roundup caused or substantially contributed to these eye injuries and headaches. *See id.* ¶¶ 23–24, 53, 133. Monsanto and Bayer CropScience also argue that a design defect theory fails because Hogarty "does not plausibly allege facts that support the claim that Roundup was unreasonably dangerous." *Id.* at 8–9.

Although the Florida Supreme Court has expressed a preference, in most circumstances, for relying on the consumer expectations test to determine whether a product is defective, Florida law also allows parties to argue based on the risk utility test to determine when a design defect has rendered a product unreasonably dangerous. *See Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 494–95, 511–12 (Fla. 2015) ("The parties may, in proving or defending against such claims, present evidence that a reasonable alternative design existed and argue whether the benefit of the product's design outweighed any risks of injury or death caused by the design."). The consumer expectations test considers whether a product "failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." *Id.* at 503. The risk utility test considers whether "the risk of danger in the design outweighs the benefits." *Force*, 879 So. 2d at 105 (citation modified). Although some courts treat the risk utility test as separate from the reasonable alternative design test, the Florida Supreme Court appears to interpret the latter as a sub-test that can be used (or may even be necessary)

20

to prove the former. *See Aubin*, 177 So. 3d at 505 (defining the "risk utility test" as whether "the foreseeable risks of harms posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . and the omission of the alternative design renders the product not reasonably safe" (citation modified)), 511–12 (describing the two tests as part of the same analysis); *but see id.* at 505 (describing the Third Restatement of Torts as adding the reasonable alternative design test to the risk utility test, suggesting they stand on their own).

As Monsanto and Bayer CropScience recognize, Hogarty alleges that Roundup's defect is that it is designed or manufactured such that it is too neurotoxic to be used by the public. *See* Joint MTD at 9; Resp. to Joint MTD at 10. Hogarty's complaint is not a model of clarity, but the bar is low, and he passes it. Hogarty alleges that the Roundup "was defective in design and formulation and dangerous and toxic to an extent beyond that which an ordinary consumer would contemplate." 3d Am. Compl. ¶¶ 48, 128. Glyphosate is a toxic substance, *id.* ¶ 16, and the Roundup contained it and "adjuvants and surfactants," *id.* ¶ 17. Although Hogarty does not know the "specifics" of the makeup of the Roundup because it is a trade secret, "adjuvants and surfactants can enhance and increase the toxic effect of a toxic substance such as glyphosate." *Id.* Thus, the Roundup used was defective because the resulting toxicity made it "unreasonably dangerous to the users," caused it to "fail[] to

21

perform as safely as an ordinary consumer would expect when used as intended," and because "there were alternative, safer designs and formulations that were feasible." *Id.* ¶¶ 48, 128.

Hogarty is correct that at this stage he is not required to provide more detailed allegations regarding the defect, which would be difficult considering his lack of information regarding the complete formula for the Roundup in question. *See* Resp. to Joint MTD at 12; *see also Godelia v. Doe 1*, 881 F.3d 1309, 1318–19 (11th Cir. 2018) (holding that it was sufficient to merely allege that a product "was defective and nonconforming," "that those defects caused [the plaintiff's] injuries," and that " 'violation of federal regulations noted above' caused the defect" because "[c]ontrary to [the defendant's argument], [the plaintiff] need not state in his complaint the precise defect"); *Bailey*, 288 F. App'x at 607–08 (finding sufficient allegations that were "conclusory" but also suggested "possible defects" and "identified the source of the defect"). In support, *Godelia* cited *Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1297 (M.D. Fla. 2014), which rejected a similar argument that a defective design claim should be dismissed for "fail[ing to] allege a single fact in support of the products unreasonably dangerous condition." Citing to *Bailey*, *Small* concluded that an allegation that a product "contained an unreasonably dangerous defect in design or formulation in that, when it left the hands of the Defendants, an average consumer could not reasonably anticipate the dangerous nature of [the

product] nor fully appreciate the attendant risk of injury associated with [the product]" was sufficient when paired with allegations of identified injury caused by the defect. *Id.* At the pleading stage, plaintiffs are not required to "set forth the precise chemical, biological, or other process by which [the product] causes [the identified injury]" as long as they "place defendants on notice of the type of harm allegedly caused by the design defect." *See id.* Hogarty has done as much.

Next, Monsanto and Bayer CropScience argue that dismissal is warranted as to any manufacturing defect theory because there are no allegations that the Roundup that Hogarty contacted did not conform to its intended design. Joint MTD at 10. This argument is unavailing—at least until later stages of this case. For now, in this regard, he is not required to allege anything more than the existence of a defect that caused the product to be unreasonably dangerous. *See Bailey*, 288 F. App'x at 606–07 (listing the elements). And, even if Hogarty had pleaded the manufacturing theory merely as an alternative to his design defect theory and without inclusion of substantial factual allegations unique to the manufacturing theory, Florida law appears to allow it. *See id.* at 605–07 ("We are not convinced that Florida law applies a rigid distinction among the various theories of recovery available to plaintiffs under strict products liability such that a plaintiff would be required to expressly plead 'design defect' versus 'manufacturing defect' at the

23

complaint stage. . . . It is difficult for a plaintiff at this stage in the litigation to know the source of the defect that was responsible for the harm caused: whether there was a surprising manufacturing problem[ or] a systemic issue with a product in its design . . . .").

Under a failure to warn theory, the defect that causes the product to be unreasonably dangerous is the failure to "adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Griffin v. Kia Motors Corp.*, 843 So. 2d 336, 339 (Fla. 4th DCA 2003) (citation modified). Monsanto and Bayer CropScience aver that Hogarty's claim, insofar as it asserts a failure to warn theory, should be dismissed because he fails to "allege the content of the warning label or describe the warning's inadequacies." Joint MTD at 12 (quoting *Flaherty v. E-Go Bike, LLC*, No. 2:21-cv-728-SPC-MRM, 2022 WL 445428, at *4 (M.D. Fla. Feb. 14, 2022)); *see also Wright v. Howmedica Osteonics Corp.*, 741 F. App'x 624, 626 (11th Cir. 2018) (per curiam) (noting the same requirements under Florida law).

Hogarty claims that he asserts both "no warning," *i.e.* failure to warn at all, which does not require the plaintiff to allege the content of a warning, and "inadequate warning" theories. *See* Resp. to Joint MTD at 16–17 (relying on *Conner v. Marriott Hotel Servs., Inc.*, 559 F. Supp. 3d 1305, 1309 (M.D. Fla.

24

2021) which describes the differences in pleading requirements between the two theories). Hogarty does not identify any allegations that squarely allege that no warning was given at all. The closest any come is the allegation that the Roundup's risks "could have been reduced or avoided by providing reasonable instructions or warnings, yet no *such* instructions or warnings were given." 3d Am. Compl. ¶¶ 48, 128 (emphasis added). This is still an allegation that the warnings were unreasonable or, in other words, inadequate.

Further, Monsanto and Bayer CropScience are correct that Hogarty also fails to allege proximate cause in the failure to warn context. *See* Joint MTD at 13. The complaint is devoid of allegations that would allow for the reasonable inference that Hogarty would have acted differently or otherwise avoided his injuries had Monsanto and Bayer CropScience provided adequate warnings.

Thus, Hogarty's strict product liability claims against Monsanto and Bayer CropScience survive, but only as to the design defect and manufacturing defect theories. Because this is the first dismissal to consider the sufficiency of the complaint's allegations, Hogarty is granted leave to amend this count to address the deficiencies as to a failure to warn theory.

25

### 2. Hogarty's misrepresentation claims against Monsanto and Bayer CropScience do not survive

Hogarty's fraudulent and negligent misrepresentation claims do not differ in any way that requires that I analyze them separately. Indeed, as Monsanto and Bayer CropScience contend, they share the same fatal flaw—the claims do not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See* Joint MTD at 14–16; FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Under Florida law, there are four elements of fraudulent misrepresentation:[5] "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010); *see also Arlington Pebble Creek, LLC v. Campus Edge Condo.*

---

[5] Although styled as a fraudulent misrepresentation claim, Hogarty's theory resembles a fraudulent inducement claim. *See, e.g.*, 3d Am. Compl. ¶ 63 ("Monsanto intentionally failed to disclose this information for the purpose of inducing consumers, including Plaintiff, to purchase Monsanto's dangerous products."). Courts applying Florida law disagree about whether fraudulent misrepresentation and inducement are the same claim. *See NorthStar Reg'l P.S.C. v. InSync Healthcare Sols., LLC*, No. 8:23-cv-02636-KKM-NHA, 2025 WL 1707205, at *4 n.4 (M.D. Fla. June 18, 2025) (collecting cases). Courts viewing them as different claims have concluded that fraudulent inducement requires a showing of *justifiable* reliance. *Id.* (citing *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003)). This case does not require resolving the disagreement because Hogarty's claim fails on an element common to both claims.

26

*Ass'n*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017) (listing the same elements for negligent misrepresentation, except "(2) that defendant *should have known* the representation was false" and the plaintiff acted (4) "in *justifiable* reliance upon the misrepresentation" (emphases added)). Florida fraudulent and negligent misrepresentation claims sound in fraud and so must satisfy Rule 9(b)'s heightened pleading standard. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127–28 (11th Cir. 2019). Among other things, Rule 9(b) requires Hogarty to set forth the precise content of the statements and how they were misleading. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) ("[Rule 9(b)] plainly requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud.").

Despite Hogarty's assertion to the contrary, Resp. to Joint MTD at 18–19, his fraudulent and negligent misrepresentation claims fail the Rule 9(b) standard. Hogarty makes only conclusory, general allegations about Monsanto and Bayer CropScience misrepresenting Roundup as "safe." *See* 3d Am. Compl. ¶¶ 61–85, 141–65; Resp. to Joint MTD at 18 (arguing that "[t]he essential lie

27

is that 'Roundup is safe' "). Nor are there any nonconclusory allegations regarding "where or when [Hogarty] viewed any alleged misrepresentations," or that would allow the reasonable inference that Hogarty relied (justifiably or not) on any alleged misrepresentations. *See Volinsky v. Lenovo (United States) Inc.*, No. 8:23-cv-00250-KKM-NHA, 2024 WL 1299315, at *8 (M.D. Fla. Mar. 27, 2024); 3d Am. Compl. ¶¶ 61–85, 141–65.

Hogarty's fraudulent and negligent misrepresentation claims against Monsanto and Bayer CropScience are dismissed without prejudice.

### 3. Hogarty's strict product liability claim against Orgill survives

Hogarty asserts all three families of strict product liability claims against Orgill. *See* 3d Am. Compl. ¶¶ 31–39. Orgill argues that Hogarty failed to state a claim because he has not sufficiently pleaded that the pump sprayer is defective. *See* Orgill MTD at 5–10. I disagree.

Orgill incorrectly perceives what Florida law demands of Hogarty at this stage. Hogarty alleges several possible defects. These include a lack of an "automatically actuated pressure relief valve or any other valve either active or passive, to protect the tank from being over pressurized," and a design that left the tank "too weak," with its wall "too thin," "irregular in thickness," and reliant on material that is "too inflexible and brittle." 3d Am. Compl. ¶ 13. And these are not the only allegations of defect. *See id.* ¶¶ 33(o)–(v). Hogarty pairs

28

these with allegations that the defects rendered the pump sprayer unreasonably dangerous under any of the tests that Florida law allows. *See id.* ¶ 33.

Orgill's other arguments on this point are ineffective. First, Orgill asserts that Hogarty must have alleged "what the pressure [inside the spray pump] was at the time of the incident." Orgill MTD at 5. Orgill provides no authority in support. If such an argument is ever effective, it is not at this stage. Orgill also misreads the complaint by contending that it alleges that pump sprayers are widely known to be "always dangerous," *id.* at 6, but the complaint alleges that Orgill knew of the dangers but did not publicize the risks, *see* 3d Am. Compl. ¶¶ 14–15, 30. Orgill contends that the complaint lacks an "allegation as to how the sprayer here was being used in a way that caused its failure." Orgill MTD at 5. Again, no authority. And, regardless, the complaint's allegations indicate that Hogarty used the pump sprayer in a normal, intended manner, *see* 3d Am. Compl. ¶¶ 1, 13–15, 18–20, creating an inference that defects in the pump sprayer caused the failure and resulting injuries. Hogarty has sufficiently alleged a design defect theory.

Like Monsanto and Bayer CropScience, Orgill contends that Hogarty failed to describe the inadequate warnings.[6] Orgill MTD at 7. There is a key

---

[6] Orgill differs from Monsanto and Bayer CropScience in that it makes no argument that Hogarty fails to sufficiently allege proximate cause in the failure to warn context.

difference—Hogarty alleges both an inadequate warning theory and a complete failure to warn theory against Orgill. *Compare* 3d Am. Compl. ¶ 14 (alleging Orgill failed to provide "appropriate warnings and instructions concerning safe operation of the pump sprayer"), *with id.* ¶ 15 (alleging that Orgill made "no mention let alone warning . . . of the fact that pump sprayers are known to burst or explode during ordinary use" and "failed to warn users/consumers and the general public of such defects"), *and id.* ¶ 30 ("Plaintiff relied upon the absence of any warnings re[garding] the use of pump sprayers . . . to believe that pump sprayers presented no threat of injury to users.").

Orgill is correct that, as with his Roundup claims, Hogarty failed to include any description of the warnings that he purports to be inadequate. *See* 3d Am. Compl. ¶¶ 11, 13, 32–33. This is insufficient. *See Wright*, 741 F. App'x at 626.

Thus, Hogarty's failure to warn claim survives to the extent that it relies on a "no warning" theory, and it is dismissed without prejudice to the extent that it relies on an "inadequate warning" theory.

Lastly, Orgill claims that there are no allegations to support a manufacturing defect theory. *See* Orgill MTD at 7. Not so. Hogarty makes the

---

*See* Orgill MTD at 7 (merely contending that Hogarty fails to describe the warnings or allege that he viewed them).

same sufficient defect allegations for a manufacturing defect theory as he does for a design defect theory. *See* 3d Am. Compl. ¶¶ 13, 33(o)–(v) (alleging each as an issue of design and manufacture). Hogarty has sufficiently alleged a manufacturing defect theory. *See Bailey*, 288 F. App'x at 605–07.

### C. Motion to Strike

Orgill also moves to strike Hogarty's request for punitive damages. Orgill MTD at 8–9. Although Orgill asks that the punitive damages be "stricken," it purports to move under only Rule 12(b)(6) in its motion. *See id.* at 1. I construe this as a motion to strike because, "[i]f a party has improperly labeled a motion to strike as a motion to dismiss, a court may treat the improperly labeled motion to dismiss as a motion to strike." *Hutchings*, 2008 WL 4186994, at \*2. Hogarty responds that he has sufficiently pleaded allegations that support his plea for punitive damages. Resp. to Orgill at 17. He is correct.

Orgill argues that there are no factual allegations showing "wanton, willful, or outrageous conduct." Orgill MTD at 8. It also claims that because the plea for punitive damages refers to "Defendants" as each engaging in "wrongful conduct . . . as detailed herein [that] was intentional, deliberate and/or in reckless disregard of the rights of the general public . . . [and] the rights of Plaintiff," that Hogarty fails to plead "any facts connecting Orgill to meet this [punitive damages] standard." *See id.* at 8–9; 3d Am. Compl. ¶ 166.

31

Both contentions are incorrect. On the latter, the punitive damages plea clearly refers to the specific pleadings throughout the complaint. Orgill cites no authority that requires Hogarty to replead much of the complaint in the immediate vicinity of his request for punitive damages. As for the former, Orgill argues under the wrong standard.[7] As a federal court sitting in diversity, the state punitive damages standard governs. *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989).

Under Florida law, "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. " 'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." *Id.* § 768.72(2)(a). " 'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." *Id.* § 768.72(2)(b).

---

[7] Even if the standard that Orgill puts forth was the correct standard, I would still conclude that Hogarty alleges "wanton, willful, or outrageous conduct."

32

Although all Hogarty's allegations and theories of liability would not suffice for showing intentional misconduct or gross negligence by Orgill, some do. For example, Hogarty alleges that Orgill "intentionally conceal[ed] . . . the results of trials, tests, and studies of failures of [the pump sprayer] and consequently the risk of serious harm associated with human use of such product." 3d Am. Compl. ¶ 42(b). He also alleges that Orgill failed to "conduct necessary tests to determine whether . . . [the] pump sprayer was safe for its intended use." *Id.* ¶ 42(c); *see also id.* ¶ 33(f) ("Orgill knew . . . that exposure to [the pump sprayer] could result in severe injuries and illness" but continued to market it); *id.* ¶ 42(k) (alleging Orgill concealed the dangers known to it that are associated with or caused by using the pump).

## IV.    CONCLUSION

There is no personal jurisdiction over Bayer Corporation in this state and I dismiss Bayer Corporation and Counts VII through X without prejudice.

To the extent that any of the remaining defendants sought to dismiss them, Hogarty's negligence claims against Monsanto (Count IV), Bayer CropScience (Count XII), and Orgill (Count II) proceed untouched. The strict product liability counts against Monsanto (Count III) and Bayer CropScience (Count XI) survive insofar as they rely on design defect and manufacturing defect theories. Hogarty may amend to address the deficiencies with the failure to warn theory. The fraudulent and negligent misrepresentation counts

against Monsanto (Counts V and VI) and Bayer CropScience (Counts XIII and XIV) are dismissed without prejudice for failure to adhere to Rule 9(b)'s heightened pleading standard. Hogarty may amend to address the deficiencies with each. The strict product liability claim against Orgill (Count I) survives except as to any failure to warn theory premised on Orgill's provision of inadequate warnings. Hogarty may amend to address the deficiencies with that theory. Lastly, Hogarty's punitive damages plea remains.

Accordingly, the following is **ORDERED**:

1. Bayer Corporation's Motion to Dismiss (Doc. 80) is **GRANTED**. The Clerk is directed to **TERMINATE** Bayer Corporation from this case.

2. Monsanto's Motion to Dismiss (Doc. 81) is **DENIED as moot**. Monsanto and Bayer CropScience's Joint Motion to Dismiss (Doc. 84) is **GRANTED in part**.

3. Orgill's Motion to Dismiss (Doc. 82) is **GRANTED in part**. Orgill's construed Motion to Strike (Doc. 82) is **DENIED**.

4. Should Hogarty wish to amend, he may do so only to address the deficiencies with Counts I, III, V, VI, XI, XIII, and XIV. He may not add new parties or claims. If he amends, he must do so no later than **June 22, 2026**. He is reminded of the earlier dismissals for shotgun pleading and my warning that continued submissions of shotgun pleadings may result in dismissal of this action.

34

5. Monsanto, Bayer CropScience, and Orgill must respond to Hogarty's operative complaint by the earlier of **14 days after a fourth amended complaint is docketed** or **July 10, 2026**.

6. No later than **July 10, 2026,** the parties must either file an amended case management report or move for a case management conference if they believe one is necessary.

**ORDERED** in Ocala, Florida, on June 5, 2026.

Kathryn Kimball Mizelle
United States District Judge

35